Carawan v. Carolina Telephone & Telegraph Co.

---

TERRI CARAWAN, PLAINTIFF/EMPLOYEE v. CAROLINA TELEPHONE AND TELEGRAPH COMPANY, DEFENDANT/EMPLOYER

No. 8510IC807

(Filed 18 March 1986)

**Master and Servant § 68— workers' compensation—allergy to pesticide—occupational disease**

Evidence was sufficient to support the Industrial Commission's findings of fact which led to its conclusion of law that plaintiff's disability was compensable as an occupational disease within the meaning of N.C.G.S. 97-53(13) where the evidence tended to show that plaintiff had a contact allergy to

Dursban contracted because of the use of the compound as an insecticide in the plant where she worked; plaintiff was exposed to a greater concentration of Dursban than the general public because of the frequency, amount of exposure, and constant close physical proximity to the sprayed area; and concentrated extra spraying on one occasion contributed to the development of plaintiff's allergy.

APPEAL by defendant from order of the North Carolina Industrial Commission filed 26 April 1985. Heard in the Court of Appeals 6 December 1985.

This is a claim for compensation pursuant to the Workers' Compensation Act. G.S. Chap. 97-1. On 18 April 1984, this matter was heard before Deputy Commissioner Lawrence Shuping, Jr. In an opinion and award filed 19 October 1984, Deputy Commissioner Shuping, *inter alia*, found as fact the following:

6. Plaintiff's aforedescribed allergic contact dermatitis was not a result of an interruption of her normal work routine, but rather was due to her own peculiar susceptibility to the insecticide Dursban with which defendant-employer regularly sprayed its business premises as part of its program of routine building maintenance and was thus, for the reasons stated in finding of fact #5 hereinabove, an ordinary disease of life to which the public was equally exposed outside of that employment.

From Deputy Commissioner Shuping's denial of an award of compensation plaintiff appealed to the Full Commission.

On 8 February 1985, this matter was argued before the Full Commission. The Full Commission adopted the opinion and award only to the extent of its stipulations. The remainder of the opinion and award was vacated and set aside. The Full Commission made new findings of fact as follows:

Findings of Fact

1. Plaintiff, 24, is married and has a high school education. From 2 April 1979 until 10 January 1983, she worked as a telephone operator for the defendant. Prior to her employment by defendant, plaintiff did not have any known allergies. The building in which plaintiff worked was old and both the building and the switchboard with which plaintiff worked

were infested with 'cord lice,' a parasite living on the fabric of insulation covering the wires manipulated by plaintiff and other operators. The lice often bit the telephone operators on the hands and arms.

2. As part of its routine building maintenance, defendant contracted with a professional pest control service to control the lice and other insects in the building where plaintiff worked. Each month the pest control company applied the insecticide Dursban to cracks, crevices, baseboards, window sills, the storage room, the lounge and other areas in the building.

3. As a result of her exposure to the insecticide Dursban in her workplace, plaintiff began to experience outbreaks of allergic contact dermatitis when she returned to work on 10 January 1983 after several days off. Plaintiff's face, upper chest and other areas of the body not covered by clothing were affected. Symptoms included inflammation of the skin, swelling, scaling, edema of the eyelids which partially closed plaintiff's eyes, burning and itching of the eyes, a nosebleed on occasion, and sleeplessness and fatigue. These symptoms afflicted the plaintiff each time she entered her workplace from her initial outbreak on 10 January 1983 until she was terminated by defendant on 10 May 1983.

4. Plaintiff's allergic contact dermatitis was caused by conditions characteristic of and peculiar to her employment. Plaintiff's employment placed her at a greater risk of contracting the disease than the public at large. Plaintiff therefore contracted an occupational disease which temporarily totally disabled her from 10 January 1983 until 23 May 1983 when she reached maximum medical improvement. Plaintiff did not sustain any permanent disability as a result of her occupational disease.

In a majority opinion and award favorable to plaintiff, then Chairman Stephenson dissenting, the Full Commission concluded as a matter of law pursuant to G.S. 97-53(13) that from 10 January 1983 until 23 May 1983, plaintiff was temporarily totally disabled as a result of her occupational disease. Defendant appealed.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Donnell Van Noppen III, for plaintiff appellee.*

*Robert Carl Voight, for defendant appellant.*

JOHNSON, Judge.

The pivotal question we must address is whether there was competent evidence to support the Full Commission's Findings of Fact which led to its conclusion of law that plaintiff's disability is compensable as an occupational disease within the meaning of G.S. 97-53(13). Findings of fact made by the Full Commission are binding on this Court if there is competent evidence tending to support the findings. *McLean v. Roadway Express, Inc.*, 307 N.C. 99, 296 S.E. 2d 456 (1982). If there is competent evidence supporting the Full Commission's findings the appellate court only has jurisdiction to review for errors of law. *Byers v. North Carolina State Hwy. Comm.*, 3 N.C. App. 139, 164 S.E. 2d 535 (1968), *aff'd*, 275 N.C. 229, 166 S.E. 2d 649 (1969). Guided by these standards of review we now examine the Full Commission's decision to award plaintiff compensation for an occupational disease.

The causes for plaintiff's disability that the Full Commission necessarily must have determined that plaintiff proved are stated in G.S. 97-53(13) as follows:

> Any disease, other than hearing loss covered in another sub-division of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

G.S. 97-53(13). Defendant asserts that the evidence shows that the causes and conditions which led to plaintiff's disability (allergic response from exposure to Dursban) are not peculiar to a particular trade, occupation or employment. We disagree.

In *Caulder v. Waverly Mills*, 314 N.C. 70, 331 S.E. 2d 646 (1985), the Court explained the "Hazards," G.S. 97-57, of occupational diseases and in so doing stated that "A condition peculiar to the workplace which accelerates the progress of an occupational disease to such an extent that the disease finally causes the worker's incapacity to work constitutes a source of danger and difficulty to that worker and increases the possibility of that worker's ultimate loss." *Caulder*, at 75, 331 S.E. 2d at 649 (employee's exposure to dust arising from synthetic fibers was exposure to a substance peculiar to the workplace and therefore, be-

cause it worsened an already contracted lung disease it was the last injurious exposure to that occupational disease within the meaning of the statute). In clarifying the meaning of "hazard" the Court emphasized "that the substance is one to which the worker has a greater exposure on the job than does the public generally, either because of the nature of the substance itself *or because the concentrations of the substance in the workplace are greater than concentrations to which the public generally is exposed." Id.* at 75, 331 S.E. 2d at 649 (emphasis ours). In the case *sub judice* plaintiff incurred three instances of allergic reactions while at her workplace; the first instance was on 10 January 1983; the second instance was on 13 April 1983; and the last instance was on 9 May 1983. Plaintiff consulted a physician who referred her to a specialist. The specialist diagnosed that she had an allergic contact dermatitis, airborne. The specialist, Dr. Jones, essentially testified to the effect that plaintiff had a contact allergy to Dursban contracted because of the use of the compound as an insecticide in the plant where she worked. Dursban is the trade name for a chemical manufactured by Dow Chemical Company. The chemical name for Dursban is chlorpyrifos. Dr. Jones, without objection, was asked to assume the following:

Q. In answering the remaining questions that I have for you, please assume that the North Carolina Industrial Commission will find by the greater weight of the evidence the following facts to be true based on all the evidence in the case: (a) the findings — assume the findings of the physical examination and tests that you have made and already testified about; (b) that Terri Carawan worked at Carolina Telephone and Telegraph as a telephone operator from April 2, 1979, to May 10, 1983, and that during her period of employment her duties as an operator required her to sit at a switchboard inserting wires and plugs into holes in the switchboard; (c) that the room in which she worked was sprayed with Dursban insecticide on a regular monthly basis by an exterminating company with the spraying occurring while operators were working and the chemical being applied to cracks and crevices about the perimeter of the room including the base of the boards of the switchboard at which the operators sit, and that the Dursban was sprayed at a concentration of 0.5% which is the most concentrated recommended concentration; (d) that in ad-

dition to the regular monthly spraying, there was in mid-November 1982, some six weeks before her first onset, an extra complete spraying of Dursban in the same operator's room which was requested by Carolina Telephone and Telegraph due to a reported incident of body lice on one employee. And in addition, at the same time operators' chairs were sprayed by both Carolina Telephone and Telegraph and by the independent exterminating company with a different chemical. Also, in addition to the regular monthly spraying of Dursban, employees of Carolina Telephone and Telegraph occasionally sprayed aerosol insecticides on and about the switchboard to get insect problems including the presence of a parasite referred to by operators as cord lice, a parasite living on the old frayed cloth insulation of the telephone cords.

A. Okay.

Q. The names and the contents of those sprays have not been identified. That Dursban chlorpyrifos is an active ingredient present in a wide range of common household and commercial insecticides, both aerosols and liquid spray varieties. That the telephone operator sits closer to the area of the repeated pesticide spraying than do people in most other occupations including the industrial, retail, and office occupations. That Terri Carawan has never experienced her allergic reaction to Dursban except in Carolina Telephone and Telegraph building where she worked. That she uses those pesticides in her home and also that she regularly shops in a supermarket which is regularly sprayed with Dursban and that when she enters that supermarket she does not experience the same reaction that she has experienced at Carolina Telephone and Telegraph.

The synopsis of the evidence introduced as stated in a prelude to a series of questions asked of Dr. Jones reveals that plaintiff was exposed to a greater concentration of Dursban than the general public because of the frequency, amount of exposure, and the constant close physical proximity to the sprayed area. Dr. Jones went on to testify that the concentrated extra spraying in November 1982 contributed to the development of plaintiff's allergy. Pursuant to G.S. 97-53 an occupational disease would be

compensable if caused by the use of certain listed chemicals as follows:

> Occupational diseases caused by chemicals shall be deemed to be due to exposure of an employee to the chemicals herein mentioned only when as a part of the employment such employee is exposed to such chemicals in such form and quantity, and used with such frequency as to cause the occupational disease mentioned in connection with such chemicals.

G.S. 97-53. We hold that although the chlorpyrifos (Dursban) plaintiff is allergic to is not listed in G.S. 97-53, the evidence permitted the Commission to find and conclude that the form and quantity of her exposure to chlorpyrifos caused her to contract a compensable occupational disease within the meaning of G.S. 97-53. In support of this holding we note that prior to a 1 July 1971 amendment of G.S. 97-53(13), plaintiff's condition was specifically deemed an occupational disease within the meaning of the Act. G.S. 97-53(13), as it then existed was as follows:

> (13) Infection or inflammation of the skin, eyes, or other external contact surfaces or oral or nasal cavities or any other internal or external organ or organs of the body due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances.

G.S. 97-53(13) (1965) (amended 1971). The amendment which eliminated this statutory language stated, hereinabove, broadened the coverage of G.S. 97-53(13) to include a wider range of conditions susceptible to interpretation of being an occupational disease within the meaning of the Act. *See generally Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979).

For the aforementioned reasons the judgment is

Affirmed.

Judges WHICHARD and PHILLIPS concur.