C. PRESTON CORNELIUS AND WIFE, MARSHA H. CORNELIUS, PLAINTIFFS v. NEAL G. HELMS; PARHAM, HELMS & KELLAM, A PARTNERSHIP; FIRST UNION MORTGAGE CORPORATION; NOEL CLARK, HECHT REALTY, INC.; HARBORGATE GROUP, INC., DEFENDANTS

No. 9422SC445

(Filed 5 September 1995)

**1. Attorneys at Law § 29 (NCI4th)— existence of attorney-client relationship—sufficiency of evidence**

The evidence was sufficient to support the trial court's findings that an attorney-client relationship existed between plaintiff sellers and defendant attorney, who closed a real estate transaction, where it tended to show that plaintiffs relied on defendant to draw a purchase money note and deed of trust, and the trial court heard testimony from two experts who stated that, in their opinion, an attorney-client relationship existed between the parties.

**Am Jur 2d, Attorneys at Law § 118.**

**2. Attorneys at Law § 44 (NCI4th)— attorney's breach of fiduciary duty—sufficiency of evidence**

The evidence was sufficient to show that defendant attorney negligently breached his fiduciary duty to plaintiffs where it tended to show that defendant did not exert his best judgment in the closing of the sale of plaintiffs' property by failing properly to apply the land draw check toward the purchase of plaintiffs' lot in accordance with the terms of the closing instructions from the construction lender; defendant failed to ask plaintiffs or the construction lender how the terms of plaintiff's contract to sell their lot could be reconciled with the lender's closing instructions; as a result of defendant's action the purchaser was able to obtain double financing for the purchase of the same lot and received a windfall after the closing while plaintiffs were placed in a second lien position on the lot, even though no construction improvements had been made; and plaintiffs' purchase money deed of trust consequently was worthless and they suffered a loss of $88,600.00.

**Am Jur 2d, Attorneys at Law § 197.**

**CORNELIUS v. HELMS**

[120 N.C. App. 172 (1995)]

Appeal by defendants from order entered 13 December 1993 by Judge Marvin K. Gray in Iredell County Superior Court. Heard in the Court of Appeals 25 January 1995.

*Weinstein & Sturges, P.A., by L. Holmes Eleazer, Jr. and J. Neal Rodgers, for defendants-appellants.*

*Doughton and Marshall, by Richard L. Doughton and Wm. Bynum Marshall, for plaintiffs-appellees.*

WYNN, Judge.

In April 1990, plaintiffs C. Preston Cornelius and Marsha H. Cornelius agreed to list a piece of property with Noel Clark, a real estate agent for Hecht Realty, Inc. In June 1990, Ms. Clark notified plaintiffs that a local developer, Ron Major ("Major"), and his company, Mady Construction Company, Inc. ("Mady Co."), wished to purchase the lot. Plaintiffs agreed to sell the lot to Mady Co.

After various negotiations, plaintiffs entered into a real estate contract with Mady Co. for the purchase and sale of the lot. This contract included the following terms:

$    1,000.00 Binder to be held by C-21

Hecht Realty

40,000.00 cash at closing on or before

7-15-90

88,600.00 Subordinate Note and Deed-of-

Trust*

$ 129,600.00 Total Sales Price (plus

Interest*)

. . .

SPECIAL INSTRUCTIONS

*Subordinate to 75% Loan-to-Value Construction Loan. Interest at 11% to be paid quarterly. Principal due 9-1-91.

Under the agreement, plaintiffs would hold a first lien purchase money deed of trust and note on the property until Mady Co. began construction on the lot. After construction was begun, plaintiffs' deed of trust and note would be subordinated to a "75% loan-to-value construction loan." However, unbeknownst to plaintiffs, Major had already secured a lot acquisition and construction loan from First

Union Mortgage Corporation ("First Union") and had requested that his attorney, Neal G. Helms ("Helms"), close both transactions simultaneously.

After executing the contract with plaintiffs, Major instructed Helms to prepare the closing documents for the sale in accordance with the plaintiffs' contract, Major's instructions, and the closing instructions provided by First Union. First Union's instructions required that it receive a first lien deed of trust on the property and that Helms report any subordinate liens.

At the closing on 3 July 1990, Major executed a purchase money deed of trust and promissory note to plaintiffs in the amount of $88,600.00 for the purchase of the lot. The purchase money deed of trust was drafted by Helms and provided that it was subject to the deed of trust to be executed by Mady Co. to First Union. This requirement was contrary to plaintiffs' sales contract which specified that their contract would be subordinate only to an amount equal to 75% of the value of the construction improvements on the lot. The effect of this provision was to enable Helms to close the construction loan from First Union simultaneously with the purchase transaction. As a result of these transactions, Major left the closing with over $89,000.00 of the land draw in his possession, and plaintiffs received $41,000.00 and the deed and note executed by Mady Co.

The deed from plaintiffs to Mady Co. was recorded on 5 July 1990. This recording was immediately followed by the recording of First Union's construction loan deed of trust and plaintiffs' purchase money deed of trust, which effectively placed plaintiffs in a second lien position behind the First Union construction loan deed of trust.

Prior to any payment by Mady Co. to plaintiffs, First Union foreclosed on the construction loan. At the foreclosure sale, First Union purchased the lot which destroyed plaintiffs' purchase money deed of trust. Mady Co. filed for bankruptcy and plaintiffs have not been paid for the lot as specified in their purchase money deed of trust and note.

Plaintiffs brought this action seeking damages from defendants Neal Helms and Parham, Helms & Kellam in the amount of $88,600.00 plus interest. Plaintiffs asserted that an attorney-client relationship existed between defendants and them and that defendants breached their fiduciary duty by not insuring that plaintiffs receive a first lien

mortgage on the property. The trial court entered judgment for plaintiffs. From this judgment, defendants appeal.

I.

Defendants first contend that the trial court erred by finding that an attorney-client relationship existed between plaintiffs and defendants such that the parties were in a fiduciary relationship. We disagree.

[1] Whether an attorney-client relationship existed between plaintiffs and defendants is a question of fact for the trial court and "our appellate courts are bound by the trial court's findings of facts where there is some evidence to support these findings, even though the evidence might sustain findings to the contrary." *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984). As fact finder, the trial court is the judge of the credibility of the witnesses who testify. The trial court determines what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom. *General Specialties Co., Inc. v. Nello L. Teer Co.*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979).

"[T]he relation of attorney and client may be implied from the conduct of the parties, and is not dependent on the payment of a fee, nor upon the execution of a formal contract." *The North Carolina State Bar v. Sheffield*, 73 N.C. App. 349, 358, 326 S.E.2d 320, 325, *cert. denied*, 314 N.C. 117, 332 S.E.2d 482, *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L. Ed.2d 338 (1985). In the subject case, the trial court found that plaintiffs relied on Helms to draw the purchase money note and deed of trust. The trial court also heard testimony from experts "Buddy" O.H. Herring and Roger Lee Edwards who stated that, in their opinion, an attorney-client relationship existed between the parties. We have reviewed the record and find that this evidence was sufficient to support the trial court's findings that an attorney-client relationship existed between plaintiffs and defendants.

[2] Since an attorney-client relationship existed between the parties, defendants owed plaintiffs a fiduciary duty to render their professional services in a skillful and prudent manner. *See Hodges v. Carter*, 239 N.C. 517, 80 S.E.2d 144 (1954). Plaintiffs contend that defendants negligently breached this fiduciary duty and therefore are liable to plaintiffs for damages. In order to show negligence in a legal malpractice action, the plaintiff must first prove by the greater weight of the evidence that the attorney breached a duty owed to his client and

CORNELIUS v. HELMS

[120 N.C. App. 172 (1995)]

then show that this negligence proximately caused the plaintiff's damages. *Summer v. Allran,* 100 N.C. App. 182, 184, 394 S.E.2d 689, 690 (1990), *disc. rev. denied,* 328 N.C. 97, 402 S.E.2d 428 (1991). The duties an attorney owes his client are delineated in *Hodges:*

> Ordinarily when an attorney engages in the practice of the law and contracts to prosecute an action on behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.

*Hodges* at 519, 80 S.E.2d at 145-146.

In *Rorrer v. Cooke,* 313 N.C. 338, 356, 329 S.E.2d 355, 366 (1985), our Supreme Court further explained the standard of care for an attorney set forth in *Hodges:*

> The third prong of *Hodges* requires an attorney to represent his client with such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. The standard is that of members of the profession in the same or similar locality under similar circumstances.

An attorney who acts in good faith is not liable for a mere error of judgment. *Hodges,* 239 N.C. at 520, 80 S.E.2d at 146. An attorney is, however, liable for "any loss to his client which proximately results from a want of that degree of knowledge and skill ordinarily possessed by others of his profession similarly situated, or from the omission to use reasonable care and diligence or from the failure to exercise in good faith his best judgment in attending to the litigation committed to his care." *Id.*

In the instant case, the trial court found that defendants did not exert their best judgment in the closing of the sale of plaintiffs' property nor did they exercise reasonable and ordinary care in handling this transaction. This conclusion is supported by evidence in the record. The evidence showed that Helms failed to properly apply the land draw check toward the purchase of the lot in accordance with the terms of the closing instructions from First Union. Helms also

**CORNELIUS v. HELMS**

[120 N.C. App. 172 (1995)]

failed to ask plaintiffs or First Union how the terms of plaintiffs' contract could be reconciled with the bank's closing instructions.

As a result of Helms' actions, Major was able to obtain double financing for the purchase of the same lot and received a windfall after the closing in the amount of $89,603.26. Plaintiffs, however, were placed in a second lien position on the lot, even though no construction improvements had been made. Consequently, plaintiffs' purchase money deed of trust is worthless and they suffered a loss of $88,600.00.

Accordingly, we conclude the trial court properly found that an attorney-client relationship existed between plaintiffs and defendants and that plaintiffs' damages were proximately caused by Helms' negligent handling of the real estate transaction.

II.

Defendants next contend that the trial court's findings of fact were not supported by competent evidence and assert that testimony from plaintiff Marsha Cornelius should not have been admitted. We disagree.

Marsha Cornelius testified about certain conversations that Ms. Clark had with Major and Helms. Defendants objected to Mrs. Cornelius' testimony regarding statements made by Major to Ms. Clark. Defendants, however, did not object to Mrs. Cornelius' testimony regarding statements made to Ms. Clark by Helms. "[T]he admission of incompetent evidence is not grounds for a new trial where there was no objection at the time the evidence was offered." *State v. Jones*, 280 N.C. 322, 340, 185 S.E.2d 858, 869 (1972). This testimony was admitted without objection, therefore defendants are precluded from raising such an objection for the first time on appeal. *State v. Jordan*, 49 N.C. App. 561, 568, 272 S.E.2d 405, 410 (1980). Accordingly, this assignment of error is without merit.

For the foregoing reasons, the judgment of the trial court is

Affirmed.

Judges LEWIS and McGEE concur.