TREVA SETZER, Administratrix of the Estate of JACK M. SETZER, Plaintiff v. BOISE CASCADE CORPORATION, Employer; and SEDGWICK JAMES OF THE CAROLINAS, Servicing Agent; Defendants

No. COA94-1253

(Filed 6 August 1996)

1. **Appeal and Error § 7 (NCI4th)— failure to comply with Rules of Appellate Procedure—appeal dismissed**

Because defendants' contentions as to the competency of plaintiff's expert witness and his testimony were conclusory and not supported by specific objections in the record and because the arguments in defendants' brief did not contain related assignments of error, defendants' appeal is dismissed.

**Am Jur 2d, Appellate Review § 547; Trial §§ 429, 1476, 1626.**

**Sufficiency in federal court of motion in limine to preserve for appeal objection to evidence absent contemporary objection at trial. 76 ALR Fed. 619.**

2. **Workers' Compensation § 401 (NCI4th)— temporary total disability benefits—failure of record to contain findings of fact or conclusions of law—case remanded to Industrial Commission**

Because the Industrial Commission's opinion and award did not contain any findings of fact or conclusions of law regarding plaintiff's entitlement to temporary total disability, the case must be remanded to the Industrial Commission for further proceedings to determine if plaintiff is entitled to temporary total disability benefits and, if so, the amount of these benefits.

Am Jur 2d, Administrative Law §§ 388, 522, 540; Workers' Compensation §§ 616, 690, 691.

Judge WALKER dissenting in part and concurring in part.

Appeal by plaintiff and cross-notice of appeal by defendants from the opinion and award entered 1 August 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 August 1995.

*Patrick, Harper & Dixon, by Gary F. Young, for plaintiff-appellee/appellant.*

*Teague, Campbell, Dennis & Gorham, by Thomas M. Clare and Bryan T. Simpson, for defendant-appellants/appellees.*

McGEE, Judge.

In 1973 decedent, Jack M. Setzer, began working for defendant, Boise Cascade Corporation. A year or two later decedent became the "starch man" at the Boise Cascade cardboard container facility in Newton, North Carolina. Decedent held that position until 1983 when he became a general maintenance man for the remainder of his employment, although he continued to occasionally substitute as the starch maker. Both positions required decedent to handle a variety of chemicals.

As the "starch man," decedent made three to four batches of starch per day in two 1500 gallon holding tanks with a formula which included cornstarch, caustic soda (sodium hydroxide), borax, resin and large quantities of water. In addition to mixing the starch batches, decedent had to waterproof and preserve the mixture by adding various resins and formaldehyde to the batches on a weekly basis. Material safety data sheets provided by defendant indicated that two of these resins contained formaldehyde.

While working with the various chemicals, decedent was supposed to wear protective gear which occasionally decedent failed to wear. He did not wear a mask or a respirator when carrying the buckets of formaldehyde because he had been told that he only needed protective gear when he mixed the caustic soda. The starch mixture, as well as the formaldehyde and resins he handled, frequently splashed onto decedent, burning holes in his clothes and causing burns and blisters on his body.

In April 1975, soon after decedent became the principal "starch man," he began experiencing severe abdominal pain, vomiting, dizzy spells and nausea. Decedent's physician discovered a gangrenous gall bladder and removed it on 17 April 1975. Over the next decade, decedent was treated by Drs. Wayne Boyles and D.W. Michael for a variety of symptoms including: bloody stools, red bumps on his head, aching pains in his joints, difficulty breathing, pain and numbness in his arms and chest, epigastric pain, nausea and dizziness.

In the fall of 1986, decedent became ill for four to six weeks and lost over forty pounds during this period of time. Decedent's regular physicians referred him to Dr. Leland Cook, who treated decedent for severe pancreatitis, and eventually released him to work in April 1987. Decedent continued to experience abdominal pain, nausea, and vomiting after returning to work and he was finally hospitalized in June 1987. Test results indicated that decedent had carcinoma of the pancreas with metastases to the lung. Decedent died on 18 January 1988.

Decedent's wife filed a claim with the North Carolina Industrial Commission which was heard in February 1993. Following the hearing, the depositions of Frederick D. Williams, Ed.D., and William R. Berry, M.D., were taken and submitted into the record. Plaintiff's witness, Dr. Williams, who had met decedent a number of years prior to decedent's death, was qualified without objection from defendants as an expert in the field of environmental health. Dr. Williams testified he researched decedent's pancreatic cancer to see whether it was linked to any of the chemicals with which decedent worked while he was the "starch man." Among Dr. Williams' findings was that decedent had been exposed to formaldehyde at levels which were much higher than recommended federal government guidelines. Additionally, Dr. Williams testified that pancreatic cancer has been linked to industrial chemical exposure and that studies have shown that employees in the paper industry show a significant level of pan-

creatic cancer which is higher than the national average. He stated that in his opinion, decedent's cancer was probably caused by his exposure to these industrial chemicals.

Dr. Berry, a physician specializing in oncology and hematology, testified for the defense. He reviewed decedent's medical records, as well as Dr. Williams' deposition, but concluded "it would still be difficult, if not impossible, to say what caused this particular man's pancreatic [cancer]." Contrary to Dr. Williams' opinion, Dr. Berry stated that there was no proven industrial exposure which was known to cause pancreatic cancer and little to no evidence to support the conclusion that formaldehyde causes pancreatic cancer.

A deputy commissioner filed an opinion and award denying plaintiff's claim on 1 March 1994. Among other things, the deputy commissioner found decedent died of "metastatic carcinoma of the pancreas with lung and abdomen involvement. . . . [but] it was not related to or caused by his employment or exposure to formaldehyde, caustic soda or other chemicals at defendant-employer's facility."

In a decision filed 1 August 1994, the Full Commission reversed the deputy commissioner and awarded plaintiff workers' compensation benefits, including medical expenses, under N.C. Gen. Stat. §§ 97-25, 97-38, 97-39. The Full Commission concluded "[decedent's] exposure to formaldehyde and other various chemicals which caused his resulting pancreatic cancer, constitutes an occupational disease characteristic and peculiar to his employment to which the general public is not equally exposed." From this opinion and award, both plaintiff and defendants appeal.

## I. Defendants' Appeal

[1] All three of defendants' issues involve the question of whether plaintiff's witness, Dr. Fred Williams, was a competent expert who presented reliable and relevant evidence upon which the Industrial Commission could support its findings of fact and conclusions of law.

N.C. Gen. Stat. § 97-86 states Industrial Commission opinions and awards may be appealed to this Court "for errors of law under the same terms and conditions as govern appeals from the superior court to the Court of Appeals in ordinary civil actions. The procedure for the appeal shall be as provided by the rules of appellate procedure." G.S. 97-86. The North Carolina Rules of Appellate Procedure are mandatory and failure to follow them subjects an appeal to dismissal.

*Marsico v. Adams*, 47 N.C. App. 196, 197, 266 S.E.2d 696, 698 (1980). Because defendants failed to comply with these Rules, we do not reach the substantive merits of defendants' arguments on appeal. Specifically, the competency of Dr. Williams and his testimony is not properly preserved for this Court's consideration under Rule 10. N.C.R. App. P. 10(b)(1). Additionally, none of the questions presented in defendants' brief identifies the related assignments of error as required under Rule 28. N.C.R. App. P. 28(b)(5).

## A. Rule 10

Rule 10(b) requires that certain action be taken to preserve the right to challenge the trial court's decision below. N.C.R. App. P. 10(b)(1). Generally, a party's failure to enter a timely and specific objection constitutes a waiver of his right to challenge the alleged error on appeal. *Power Co. v. Winebarger*, 300 N.C. 57, 68, 265 S.E.2d 227, 233-34 (1980). Even where a general objection is sufficient, its benefit may be lost when substantially the same evidence is later admitted without renewing the earlier objection. *Id.* This rule applies to objections to the competency of testimony. *Meroney v. Avery*, 64 N.C. 312, 313 (1870) (stating that objections to the competency of testimony must be timely made or they are waived). When testimony is admitted without objection, the appellant is precluded from raising an objection for the first time on appeal. *Cornelius v. Helms*, 120 N.C. App. 172, 177, 461 S.E.2d 338, 341 (1995), *disc. review denied*, 342 N.C. 653, 467 S.E.2d 709, *reconsid. dismissed*, 342 N.C. 894, 467 S.E.2d 909 (1996).

We have reviewed the record and find most of defendants' contentions as to the competency of plaintiff's expert witness and his testimony are conclusory and not supported by specific objections in the record. Defendants must first have objected to this witness and his testimony in order to preserve these issues for appellate review. N.C.R. App. P. 10(b)(1). In the few instances where defendants objected to portions of this witness' testimony, substantially the same testimony was later admitted without objection; therefore the benefit of the earlier objections was lost. *Power Co.*, 300 N.C. at 68, 265 S.E.2d at 233-34.

Finally, we note as to the adequacy of the expert witness' various reports and studies, defendant had ample opportunity to impeach these studies during cross-examination of the witness and by introducing other expert witnesses to discredit these studies or this witness.

## B. Rule 28

Defendants are also in violation of Rule 28 because the arguments in their brief do not contain the related assignments of error. Rule 28 summarizes the function and content of appellate briefs and requires the parties to clearly define the questions presented to the reviewing court. N.C.R. App. P. 28(a). An appellant's brief is required to contain, among other things, a separate argument for each question presented and "[i]mmediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal. Assignments of error not set out in the appellant's brief . . . will be taken as abandoned." N.C.R. App. P. 28(b)(5); *See also Hines v. Arnold*, 103 N.C. App. 31, 37-38, 404 S.E.2d 179, 183 (1991). For the foregoing reasons, defendants' appeal is dismissed.

## II. Plaintiff's Cross-Appeal

[2] In a cross-appeal to this Court, plaintiff argues that the Industrial Commission failed to award benefits for temporary total disability from 2 June 1987, the date decedent was diagnosed with cancer, until 18 January 1988, the day decedent died. Plaintiff contends that this period of time is compensable under N.C. Gen. Stat. § 97-29.

Defendants argue that decedent did not suffer from a compensable occupational disease; however, they concede that if this Court determines that decedent did suffer a compensable occupational disease, then plaintiff would be entitled to receive the unpaid, temporary total disability benefits from 2 June 1987 until decedent's death in January 1988. The record before us is insufficient to consider the question of temporary total disability compensation which may be owed to plaintiff.

This Court's review of an Industrial Commission decision is limited to whether there is any competent evidence to support the Commission's findings of fact and whether these findings of fact support the Commission's conclusions of law. *McLean v. Roadway Express*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982). Because the Full Commission's opinion and award does not contain any findings of fact or conclusions of law regarding plaintiff's entitlement to temporary total disability, this case must be remanded to the Industrial Commission for further proceedings to determine if plaintiff is entitled to temporary total disability benefits and if so, a determination of the amount of these benefits. *See Stanley v. Hyman-Michaels Co.*,

222 N.C. 257, 266, 22 S.E.2d 570, 576 (1942) (case remanded where the Commission failed to find fact).

Dismissed in part and remanded in part.

Judge COZORT concurs.

Judge WALKER concurs in part and dissents in part.

Judge WALKER dissenting in part and concurring in part.

I recognize the deficiencies in defendants' appeal as pointed out by the majority. However, in order to prevent any manifest injustice to the defendants, I would nonetheless review the merits of their appeal pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure. *State v. Petty*, 100 N.C. App. 465, 466, 397 S.E.2d 337, 339 (1990).

All three questions raised in defendants' brief involve the central issue of whether plaintiff's witness, Dr. Fred Williams, was competent to testify regarding the cause of decedent's pancreatic cancer. Dr. Williams was qualified without objection by defendants as an expert who examines the relationship between occupational exposures and the development of disease in the field of environmental health. Dr. Williams, relying on medical and scientific literature, testified that pancreatic cancer has been linked to industrial chemical exposure. Further, Dr. Williams opined that decedent's pancreatic cancer was probably caused by his exposure to formaldehyde, sodium hydroxide, and other industrial chemicals during his employment with Boise Cascade.

It is well recognized that an expert may testify regarding the ultimate issue. *Beam v. Kerlee*, 120 N.C. App. 203, 215, 461 S.E.2d 911, 920 (1995), *cert. denied*, 342 N.C. 651, 457 S.E.2d 703 (1996). Furthermore, our Supreme Court has recently clarified the task of trial judges when faced with a proffer of expert scientific testimony in the case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L.Ed.2d 469 (1993). In *Daubert*, the Court held that the trial judge must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at ——, 125 L.Ed.2d at 482. The Court said that a pertinent consideration is whether the "theory or technique has been subjected to

peer review and publication." *Daubert,* 509 U.S. at ——, 125 L.Ed.2d at 483.

Here, Dr. Williams cited at least five studies regarding pulp and paper mill workers, which demonstrated that employees in the pulp and paper industry suffer from pancreatic cancer at a higher rate than the national average. Dr. Williams also relied on other textbook materials to support his position that a link has been established between occupation and the incidence of pancreatic cancer. Therefore, we find that there was a sufficient factual basis to support Dr. Williams' testimony.

Additionally, I note that the defendants had ample opportunity to cross-examine Dr. Williams regarding the scientific and medical literature upon which he relied. Also, defendants introduced their own expert in an effort to refute the testimony of Dr. Williams.

However, it is the province of the Industrial Commission, not the appellate courts, to weigh the credibility of the evidence. Therefore, the Commission did not err by accepting the expert opinion of Dr. Williams. Accordingly, I would affirm the decision of the Full Commission on this issue.

With regard to plaintiff's cross-appeal, I concur with the majority that the case must be remanded to the Industrial Commission for further proceedings to determine if plaintiff is entitled to temporary total disability benefits.