"[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v. Freight Carriers, 300 N.C. 164, 167,265 S.E.2d 389 (1980). "Expert testimony may be given in terms of an opinion that something might, could or would produce certain result. It is necessary, however, that the facts upon which the expert bases his opinion or conclusion permit reasonably accurate conclusions as distinguished from mere guess or conjecture." Lockwood v. McCaskill, 262 N.C. 663,667, 138 S.E.2d 541 (1964).
"A particular scientific theory or methodology is considered `trustworthy,' . . . when it is scientifically valid." [Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,] 113 S.Ct. [2786,] 2800, 125 L.Ed.2d [469], 487 [(1993), cited with favor in State v. Goode, 341 N.C. 513,461 S.E.2d 631 (1995); State v. Spencer, 119 N.C. App. 662,459 S.E.2d 812 (1995); Setzer v. Boise Cascade Corp.,123 N.C. App. 441, 473 S.E.2d 431 (1996)]. "Scientific method `"is what distinguishes science from other fields of human inquiry.'" Id. This distinction justifies the special treatment scientific testimony is given under the federal rules.See [Daubert v. Merrell Dow Pharmaceuticals, Inc.,509 U.S. 579,] at ___, 113 S.Ct. at 2796; 125 L.Ed.2d at 482 (1993) (noting Rules 702 and 703 [of the Federal Rules of Evidence, almost identical to North Carolina's] are lone exceptions to personal knowledge limitations placed on opinion testimony of other witnesses). Specifically, scientific expert opinion testimony is allowed on the rationale that the expert can tie the facts of a particular case to tested scientific theory.See Porter [v. Whitehall Laboratories, Inc.,9 F.3d 607, 614 (7th Cir. 1993)]. This allows the fact-finder to infer that the case before it comports with that theory. SeeId. `If the experts cannot tie their assessment of data to known scientific conclusions, based on research or studies, then there is no comparison for the [fact-finder] to evaluate.'Id. This explains Daubert's focus on scientific method: the court must `rule out "subjective belief or unsupported speculation,.'" Id. (quoting Daubertv. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, at ___;113 S.Ct. 2786, at 2795; 125 L.Ed.2d 469 at 481 (1993)."
Bradley v. Brown, 852 F. Supp. 690, 698 (1994).
Plaintiff has failed to prove by the greater weight of the evidence that exposures at the workplace caused or contributed to his condition, variously characterized as "multiple chemical sensitivity" (MCS) or "multiple chemical toxicity" (MCT), or to connect his problems to any of the chemicals listed in N.C. Gen. Stat. § 97-53, although there is evidence of exposure to some (e.g., Benzol). Plaintiff's experts acknowledge that the MCS and MCT diagnoses are "outside the mainstream". Characterizations aside, the problem here is that there is no logical basis for finding that it is more probable than not that plaintiff's condition results from his employment, as Dr. Wiley's deposition demonstrates. He testified that it could be caused by exposures in the typical home, including agents like perfume and household cleaning solutions (pps 37 47). Oil heat and copper plumbing, as plaintiff had in his home, could be involved, and plaintiff did have elevated copper in his body (pps. 35 60-61). Dr. Wiley felt that food allergy was a part of the plaintiff's problem, and that plaintiff was allergic to grasses (pps. 40 
52). Dr. Wiley was also treating plaintiff's wife. Many of plaintiff's symptoms could be explained by depression and/or chronic fatigue syndrome, conditions which he might have had (p. 55). Perhaps the clearest physical marker of problems of this type, "leaky gut syndrome", was found by Dr. Wiley in "every rheumatoid . . . every food allergy [patient] that comes in" (p. 57). Temporal relationships between possible exposures and symptoms are not compelling in light of the theory that relatively minute amounts of chemicals and exposures over extended periods of time can cause the development of symptoms of MCS or MCT (see, by contrast, the relatively defined exposure events in Keel v. HV, Inc., 107 N.C. App. 536, 537,421 S.E.2d 362 (1992) and Carawan v. Carolina Tel. Tel.Co., 79 N.C. App. 703, 705, 340 S.E.2d 506 (1986)), the contemporaneous exposures outside the employment, and the Deputy Commissioner's evaluation the unreliability of plaintiff's account of his symptoms, etc. It is not entirely clear that medical science has documented a definitive profile, or constellation of symptoms (Tr. pp. 41 and 61), or sequence of symptoms, or "diagnosis by exclusion" criteria, to clearly identify MCS or MCT. Be that as it may, in this case, we cannot reasonably find that plaintiff's problems were "arising out of" his employment — the criteria for compensability that is "the very sheet anchor" of the workers' compensation system.Duncan v. City of Charlotte, 234 N.C. 86, 91,66 S.E.2d 22 (1951). Consequently, I concur in the denial of compensation benefits.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
JRW:md Hrg 12/5/96; 3/17/97