WILLIAM T. McLEAN, EMPLOYEE v. ROADWAY EXPRESS, INC., EMPLOYER, SELF-INSURER

No. 212PA82

(Filed 3 November 1982)

**Master and Servant § 77.1— modification of workers' compensation award proper—change in condition**

In a workers' compensation proceeding, the evidence in the record, including a doctor's determination that plaintiff's permanent partial disability had changed from 30% to 50% following a back operation, supported the Industrial Commission's findings of fact and its conclusion of law that plaintiff suffered a change in condition within the meaning of N.C.G.S. 97-47.

Justice MITCHELL took no part in the consideration or decision of this case.

ON writ of certiorari to review the decision of the Court of Appeals, 56 N.C. App. 451, 289 S.E. 2d 58 (1982), reversing an award for the plaintiff filed 29 December 1980 by the North Carolina Industrial Commission.

Plaintiff, William T. McLean, seeks an increased award of workers' compensation benefits due to a change for the worse in his physical condition. A hearing commissioner from the Industrial Commission found as a matter of law that the plaintiff had suffered a change in condition and increased his award pursuant to N.C.G.S. 97-47. Defendant appealed to the full Industrial Commission, which affirmed the decision of its hearing commissioner. The defendant appealed to the Court of Appeals, which reversed, holding that there was no evidence to support the Commission's conclusion that Mr. McLean had suffered a change in

condition. For reasons stated below, we reverse the decision of the Court of Appeals.

*Womble, Carlyle, Sandridge & Rice, by Keith W. Vaughan, for plaintiff appellant.*

*Blackwell, Blackwell, Canady & Eller, by Jack E. Thornton, Jr., for defendant appellee.*

MARTIN, Justice.

Plaintiff was thirty-three years old when he suffered a back injury 11 December 1976 while employed by the defendant as a dock worker. Initially, he was treated for the injury by Dr. Stephen Homer. During surgery Dr. Homer performed a "Gill procedure," which consists of removing some of the bone in the back of the vertebral canal or posterior elements of the spine in order to relieve pressure on the nerve roots of the spinal canal. After this procedure plaintiff continued to experience pain and discomfort and could not work.

On 5 October 1977, plaintiff visited Dr. Frank Pollock to obtain an evaluation of the extent of his disability. At a hearing before the Industrial Commission, Dr. Pollock testified that at that time he felt the plaintiff had reached maximum improvement from the surgery performed by Dr. Homer, and he gave the plaintiff a 30 percent permanent partial disability rating. However, he advised Mr. McLean that if his pain did not improve, he would need to undergo a further surgical procedure known as a back fusion.

On the basis of the rating given to Mr. McLean by Dr. Pollock, plaintiff and defendant entered into a memorandum of agreement on 15 November 1977 which called for defendant to pay plaintiff for 30 percent permanent partial disability to the back. Upon his petition, plaintiff was paid his benefits in a lump sum on 13 February 1978.

Plaintiff was treated by Dr. Pollock for pain resulting from the back injury from October 1977 through March 1978. Dr. Pollock later testified that during that period the plaintiff's physical condition steadily worsened and that he advised the plaintiff that a back fusion might ameliorate it. More specifically, he told the plaintiff that any such surgery "had a greater than

50-50 chance to decrease his current disability. There was [also] a substantial possibility that he would be disabled further by it." Plaintiff decided to undergo the surgery, and Dr. Pollock performed it on 10 April 1978. This surgery consisted of a fusion of the spine from the third lumbar vertebra to the first sacral vertebra. As a result of the surgery, plaintiff suffered more rigidity of his back and ultimately worse pain than he had suffered before the surgery. After the surgery Dr. Pollock saw plaintiff in his office in May, June, August, October, and November 1978 and in January, February, March, August, September, and October 1979.

In January 1979, Dr. Pollock concluded that plaintiff had reached maximum improvement following the back fusion and changed his rating of plaintiff's permanent partial disability to 50 percent. At a hearing before the Industrial Commission on 29 April 1980, he testified that this remained his opinion of the extent of plaintiff's permanent partial disability. Dr. Pollock noted that in increasing his disability rating he had taken into account the fact that plaintiff "had had additional surgery." Both he and the plaintiff testified that between 5 October 1977 when plaintiff was first rated by Dr. Pollock and April 1978 when the back fusion was performed, the condition of plaintiff's back had changed for the worse. Following the second surgical procedure, his condition further worsened.

Upon this evidence, the Industrial Commission found facts as follows:

4. Following his initial surgery, the plaintiff was unable to perform his old job as it involved heavy lifting and he continued to experience pain in his back and some limitation of mobility. He discussed with both Dr. Homer and Dr. Pollock the possibility of a spinal fusion surgery as a potential method of reducing his disability. Dr. Homer advised him that the chances of spinal fusion surgery decreasing his disability were 50-50. Dr. Pollock also advised him that there was no guarantee that he could obtain relief by spinal fusion, and that there was a possibility that his back could be made worse by the operation. The plaintiff elected to have the surgery performed on April 10, 1978.

5. On January 30, 1979, some nine months following his second operation, the plaintiff was given a 50 percent permanent partial disability rating of his back by Dr. Pollock. As reasons for his rating Dr. Pollock identified the factors that the plaintiff had undergone a second operation and that he still suffered some discomfort and pain in his back. This rating followed a lengthy period during which the plaintiff received post-operative treatment from Dr. Pollock.

6. The reason Dr. Pollock changed his rating of permanent partial disability from 30 percent to 50 percent of the back was that the plaintiff had undergone a second operation on his back which involved a Gill type procedure lateral gutter type fusion, exploration of the nerve roots, and spinal cord, and that the plaintiff was still experiencing discomfort in the low back region.

The Commission concluded as a matter of law that the "[p]laintiff has had a change of condition since he was rated as having a 30 percent permanent partial disability of the back and now has a 50 percent permanent partial disability of the back."[1] It is this finding that the Court of Appeals declared erroneous.

Jurisdiction of appellate courts on appeal from an award of the Industrial Commission is limited to the questions (1) whether there was competent evidence before the Commission to support its findings and (2) whether such findings support its legal conclusions. *Hansel v. Sherman Textiles,* 304 N.C. 44, 283 S.E. 2d 101 (1981); *Perry v. Furniture Co.,* 296 N.C. 88, 249 S.E. 2d 397 (1978). Except as to questions of jurisdiction, the rule is that the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence. This is so even though there is evidence to support a contrary finding of fact. *Walston v. Burlington Industries,* 304 N.C. 670, 285 S.E. 2d 822, *rehearing allowed for limited unrelated purpose,* 305 N.C. 296, 285 S.E. 2d 822 (1982); *Hansel v. Sherman Textiles, supra; Morrison v. Burlington Industries,* 304 N.C. 1, 282 S.E. 2d 458 (1981); *Perry v. Furniture Co., supra; Inscoe v. Industries, Inc.,* 292 N.C. 210, 232 S.E. 2d 449 (1977). Defendant here excepted only to finding of fact number 7,

---

1. This conclusion of law was also set out in the hearing commissioner's opinion and award as finding of fact number 7.

which is actually a conclusion of law. Therefore, it is presumed that all findings of fact are supported by competent evidence, and they are conclusive on appeal. *Brown v. Board of Education*, 269 N.C. 667, 153 S.E. 2d 335 (1962); *Durland v. Peters, Comr. of Motor Vehicles*, 42 N.C. App. 25, 255 S.E. 2d 650 (1979). We are thus limited to the question whether such findings support the Industrial Commission's conclusion of law that the plaintiff suffered a change in condition entitling him to an increase in benefits.

In relevant part, N.C.G.S. 97-47 provides:

> Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article, and shall immediately send to the parties a copy of the award.

In construing this statute, the Court of Appeals has noted that: "A change in the degree of permanent disability is a change in condition within the meaning of G.S. 97-47." *West v. Stevens Co.*, 12 N.C. App. 456, 461, 183 S.E. 2d 876, 879 (1971). *See also Knight v. Body Co.*, 214 N.C. 7, 197 S.E. 563 (1938).

At the hearing before the Industrial Commission on 29 April 1980, Dr. Pollock testified that plaintiff's degree of permanent partial disability had changed from 30 to 50 percent. A physician's change of opinion with respect to degree of permanent partial disability is not evidence of a change in condition within the meaning of N.C.G.S. 97-47 if it is based solely on his reconsidering the contents of the patient's medical record as of the date of his first opinion. *See Shuler v. Talon Div. of Textron*, 30 N.C. App. 570, 227 S.E. 2d 627 (1976). If, however, the physician examines his patient subsequent to the date of his first opinion and in the interim the patient's physical condition has deteriorated, then a change of opinion with respect to the degree of permanent partial disability is evidence of a change in condition for purposes of N.C.G.S. 97-47.

> Change of condition "refers to conditions different from those existent when the award was made; and a continued incapacity of the same kind and character and for the same injury is

not a change of condition . . . the change must be actual, and not a mere change of opinion with respect to a pre-existing condition." 101 C.J.S., Workman's Compensation, sec. 854(c), pp. 211-2. . . . Change of condition is a substantial change, after a final award of compensation, of physical capacity to earn and, in some cases, of earnings.

*Pratt v. Upholstery Co.*, 252 N.C. 716, 722, 115 S.E. 2d 27, 33-34 (1960). *See also Edwards v. Smith & Sons*, 49 N.C. App. 191, 270 S.E. 2d 569 (1980), *cert. denied*, 301 N.C. 720 (1981); *Shuler v. Talon Div. of Textron, supra.* In the present case, Dr. Pollock changed his rating of the degree of plaintiff's permanent partial disability from 30 percent to 50 percent because plaintiff's condition had demonstrably worsened between 5 October 1977 and 30 January 1979. We find that the evidence in the record, including Dr. Pollock's determination, supports the Industrial Commission's findings of fact and its conclusion of law that plaintiff suffered a change in condition within the meaning of N.C.G.S. 97-47. *See Knight v. Body Co., supra*, 214 N.C. 7, 197 S.E. 563 (1938). Therefore, the Court of Appeals erred in holding that the Industrial Commission's conclusion of law as set forth above was erroneous. For this reason, the decision of the Court of Appeals is

Reversed.

Justice MITCHELL took no part in the consideration or decision of this case.