The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
* * * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is self insured.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment on 30 December 1985, and 2 January 1986.
5. Plaintiff's average weekly wage was $384.69, yielding a compensation rate of $256.45.
6. In addition, the parties by stipulation offered into evidence the following documents:
 a. Medical reports concerning plaintiff from Dr. Robin Hicks of Charlotte Orthopaedic Specialists in Charlotte, North Carolina.
 b. Physical therapy records concerning plaintiff from Rowan Regional Medical Center in Salisbury, North Carolina.
 c. Employment letters concerning plaintiff's employment with Dunning Metal Innovations in Lexington, North Carolina.
 d. Functional capacity evaluation of plaintiff from Barbara Gordon Green, PT, Workstart Coordinator.
 e. Letter dated June 29, 1993, from Dr. Anthony H. Wheeler of Charlotte Orthopaedic Specialist in Charlotte, North Carolina, regarding plaintiff's work capacity.
 f. Letter dated April 5, 1994, from Ms. Pat Everhart, Director of Davidson County Employment Training Department.
 g. Plaintiff's permanent student record from Davidson County Community College in Lexington, North Carolina.
h. Newspaper article regarding Market America.
i. Deposition of employee Kyle J. Lanning.
 j. Materials describing Market America's compensation practices.
* * * * * * * * * * *
The Deputy Commissioner's Opinion and Award was based upon an erroneous interpretation of law and not on any finding of credibility with respect to testimony. The Full Commission finds as follows:
FINDINGS OF FACT
1. Kyle J. Lanning is a 36 year old male married and living with his wife. He has an adult adopted son and a 18 year old son. Prior to December 30, 1985, he had been employed as a heavy equipment operator, weaver, dump truck driver, and fork lift operator, all of which range in the medium to heavy level of exertion and all jobs which were skills acquired or learned on the job. He is a United States Army National Guard veteran who has completed eight years of education and who has obtained a GED certificate since being injured. Prior to December 30, 1985, he was employed as a mixer operator by Fieldcrest Cannon, Inc., a job which he had held for a number of years.
2. On December 30, 1985, Plaintiff injured his back at work while attempting to lift a 10 gallon bucket of dye mixes stuck to the floor at the same time he was climbing steps. He felt immediate pain and numbness, and began to experience discomfort and inability to perform his job. Plaintiff reported the injury and attempted to work until January 20, 1986, when he was advised to rest and conservative medical treatment was administered without offering any relief. On January 30, 1986, Dr. William Mason, an orthopaedic specialist, performed a laminectomy diskectomy in treatment of a herniated nucleus pulposus.
3. Following surgery, as a consequence of continuing and chronic pain, further medical treatment was undertaken which resulted a second surgery. On June 30, 1987, Dr. Robin Hicks performed an intertransverse fusion. Following this surgery, Plaintiff experienced the return of significant chronic pain, and subsequently undertook physical therapy and work hardening programs. Disability ratings have ranged from 25-45% during Plaintiff's treatment. Plaintiff was last discharged prior to the initial award with a rating of 25-30% permanent partial disability of back.
4. On March 11, 1991, Deputy Commissioner Scott M. Taylor entered an Opinion and Award requiring defendant to pay plaintiff compensation for total disability for the remainder of plaintiff's life, his return to work or a change in his condition, whichever first occurred, at the rate of $256.45 per week. From this Opinion and Award, defendant appealed to the Full Commission, which entered an Opinion and Award on July 1, 1992, affirming the Opinion and Award of Deputy Commissioner Taylor.
5. Subsequently, beginning in September, 1993, Plaintiff enrolled in a machinist course at Davidson County Community College. Plaintiff completed this course on or about August 4, 1994. On or about September 5, 1994, he began work as a machinist with Dunning Metals Innovations, a job which was less than a month in duration. He began this job working only a few hours a day, and gradually increased his hours to full time, near the end of his term of employment. However, due to his employer's lifting requirements, which exceeded his restrictions, he was unable to continue this job. Defendant mistakenly continued to pay plaintiff during his employment with Dunning Metal Innovations, resulting in an overpayment of $894.98.
6. Shortly afterward, in October, 1994, Employee-Plaintiff became employed full time by Everette's Machine Company as a machinist earning $10.50 per hour. Employee-Plaintiff was able to adapt successfully to this job on a sustained basis for over a year, in part due to his employer's ability to structure his job within Employee-Plaintiff's functional limitations restricting his ability to sit, stand and lift. (A clear inference is that a machinist job within these restrictions is not available in the open market.) However, beginning in late 1995 or early 1996, Employee-Plaintiff's job requirements increased. Employee Plaintiff was promoted to shop foreman; however, the growth of the employer's business required Employee-Plaintiff to perform repetitive lifting in excess of his limitations, and his employer was unable to provide him with the necessary assistance with lifting to assure that Employee-Plaintiff would be able to perform this job without further injury to his back. Plaintiff testified that his back began bothering him after Everette Machine Company changed his job requirements. Prior to March 1996 his job required him to lift only 10-15 pounds. In March 1996 he began to lift 70 pound pieces of sheet metal with a co-employee ten to twenty times per day. Once or twice he lifted the 70 pound sheet metal by himself. His back became painful and he went to see his doctor.
7. In April, 1996, Employee-Plaintiff suffered a relapse due to the exertional requirements of his job. On April 22, 1996, Employee-Plaintiff found it necessary to consult Dr. Hicks, who prescribed a regimen of physical therapy to alleviate the reoccurrence of back pain, and required Employee-Plaintiff to stay out of work at least temporarily after completing his physical therapy. Employee-Plaintiff then determined that his employer could no long accommodate the job Employee-Plaintiff had been performing to Employee-Plaintiff's exertional restrictions, and Employee-Plaintiff has not returned to this job nor sought any other machinist job since his work restrictions would require accommodation that most machine shops were unlikely to meet.
8. Since April, 1996, Employee-Plaintiff's sole income has been as a marketing representative or distributor for Market America. This venture is described as a "multi-level marketing" approach in which representatives purchase a distributorship, sell products and recruit other distributors. Employee-Plaintiff has been expending approximately 10 — 20 hours per week in this venture, earning $300.00 — $600.00 per month in commissions. If this venture is successful, Employee-Plaintiff hopes to spend less time actively soliciting accounts, as his compensation is based upon (1) his own sales; (2) commissions based upon sales of either the distributors he has recruited. The Full Commission takes "judicial" notice that US Chamber of Commerce statistics show that most new small businesses fail within the first five years, and multi-level marketing schemes have a high failure rate. Plaintiff's testimony that he might eventually be able to make a living through this scheme thus is found by the Full Commission to be a triumph of hope over experience and thus not highly credible.
9. Issues to be decided include:
 A. Have substantial and material changes of conditions rendered Employee-Plaintiff totally disabled?
 B. Alternatively, have substantial and material changes of conditions rendered Employee-Plaintiff's permanently partially disabled?
10. Defendant Employer paid plaintiff pursuant to the 11 March 1991 Opinion and Award for the period from 14 December 1988 through 5 October 1994, at which time the plaintiff began his aforementioned job as a machinist for Everette Machine Company in Linwood, NC.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. N.C.G.S. § 97-47 provides in part that, "Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article . . ." Plaintiff has undergone substantial, material changes of condition that entitle him to a reinstatement of disability benefits pursuant to N.C.G.S. § 97-29, subject to a credit for net earnings from his self-employment enterprise.
While he was able to go back to work for a time after retraining, the job he performed was not ordinarily available in the open market in that machinists are ordinarily required to do lifting beyond plaintiff's lifting restrictions. Additionally, he ultimately was unable to perform the job because of his earlier compensable injury. The substantial and material change of condition is the inability to continue earning wages at the machinist job because the job changed so that he could no longer do it under his physician's work restrictions coupled with the strong inference that similar jobs within his restrictions were unavailable in the economy.
2. N.C.G.S. § 97-47 does not define what is required to show what is required in order to show "change in condition." North Carolina caselaw describes "change in condition" as a condition occurring after a final award of compensation that is "different from those existent when the award was made". Weaver -vs- SwedishImports Maintenance, Inc., 319 N.C. 243, 247, 354 S.E.2d 477, 480
(1987). This "change of condition" can consist of either (1) a change in the claimant's physical condition that impacts his earning capacity McLean -vs- Broadway Express, Inc., 307 N.C. 99,103-04, 296 S.E.2d 456, 459 (1982); Dinkens -vs- Federal PaperBd. Co., 120 N.C. App. 192, 195, 461 S.E.2d 909, 910 (1995), (2) a change in the claimant's earning capacity even though claimant's physical condition remains unchanged; Smith -vs- Safrit Co.,212 N.C. 608, 610, 194 S.E. 106, 108 (1937), Weaver, 319 N.C. at 248,354 S.E.2d at 480; 3 Larson, The Law of Workman's Compensation
§ 81.31(e) (1996), or (3) a change in the degree of disability even though claimant's physical condition remains unchanged, West -vs-Stevens Co., 12 N.C. App. 456, 461, 183 S.E.2d 876, 879 (1971).
3. Employee-Plaintiff originally elected to seek recovery of compensation under N.C.G.S. § 97-29, and successfully prevailed in establishing that he was totally and permanently disabled according to the holdings of the North Carolina Supreme Court inWhitley vs. Columbia Lumber Mfg. Co., 318 N.C. 89,348 S.E.2d 336 (1986), and Peoples vs. Cone Mills Corp., 316 N.C. 426, 343 S.E.2d. 798 (1986). This resulted in the Opinion and Award of the Full Commission on July 1, 1992, affirming the Award and Opinion of the Deputy Commissioner on March 11, 1991, both of which were based in part upon a combination of Employee-Plaintiff's exertional limitations in which the Commission found that Employee-Plaintiff lacked the strength and durability to perform work within his residual functional capacity, and in part upon his non-exertional limitations which included Employee-Plaintiff's limited education and learning disability. The Award and Opinion granted Employee-Plaintiff compensation continuing until his "return to work."
4. Employee-Plaintiff thereafter took affirmative steps to overcome his non-exertional limitations through successful completion of a skilled trade course qualifying him as a machinist. During the same period of time, his strength and durability gradually increased to the degree that he became able to sit and stand for the requisite periods of time necessary to perform full time gainful employment on a sustained basis. Through his own efforts, Employee-Plaintiff thereafter successfully returned to work as defined in the Workers' Compensation Act. This event constituted a change of condition creating the presumption that his disability ended. Tucker vs. Lowdenmilk,233 N.C. 185, 63 S.E.2d 109 (1951), and compensation under the Award was properly terminated.
5. It is important to note that, at this point, Employee-Plaintiff's successful adaptation to full time gainful employment did not arise from an amelioration of Employee-Plaintiff's remaining residual functional capacity, nor otherwise reflect an increase in his remaining functional limitations restricting his ability to lift. The evidence tends to show that once Employee-Plaintiff returned to full-time work, this required him to apply essentially all of this strength and durability to meet the requirements of his work, and reduced his ability to engage in normal non-work activities. Furthermore, for Employee-Plaintiff to work at each of his two jobs as a machinist, his employers had to specifically adapt and tailor the job to meet Employee-Plaintiff's restrictions for occasional and repetitive lifting. Neither of these jobs as Plaintiff performed them were jobs available in significant numbers in the local or national economy. In early 1996, Employee-Plaintiff experienced two further changes in circumstances. First, his employer could no longer adapt or tailor Employee-Plaintiff's job to Employee-Plaintiff's exertional restrictions. Employee-Plaintiff attempted to continue his employment, but the increased exertional directly resulted in a relapse and deterioration of Employee-Plaintiff's medical condition, which caused Employee-Plaintiff to cease work. These substantial and material changes of conditions constitute a recurrence of Employee-Plaintiff's disability cognizable under N.C.G.S. § 97-47, which has the following implications: If Employee-Plaintiff is unable to work and earn any wages, he is totally disabled. If he is able to work and earn some wages, he is partially disabled.Robinson vs. J.P. Stevens and Co., 57 N.C. App. 619,292 S.E.2d 144 (1982). The disability of an employee is to be measured by his capacity or incapacity to earn the wages he was receiving at the time of his injury. Hill vs. Dubose, 234 N.C. 446, 67 S.E.2d 371
(1951), Robinson vs. J.P. Stevens and Co., Supra.
6. Employee-Plaintiff's earnings from his venture as a distributor for Market America are not "wages" because these earnings are not directly related to the ability of Employee-Plaintiff to engage in full-time employment, nor to any measurable time or effort expended by Employee-Plaintiff. Nor can this be classified as "employment", as there is no requirements that Employee-Plaintiff devote any time or effort to this venture. At most, any income from Employee-Plaintiff's venture as a Market America distributor would properly be classified as income for which Defendant would be entitled to be given credit. Barnhardtvs. Yellow Cab Co., 266 N.C. 419 146 S.E.2d 479 (1966). Additionally, US Chamber of Commerce statistics show that the majority of newly-created small enterprises fail as economic entities within the first five years of their life. People do not ordinarily undergo the expense of starting such a risky entrepreneurial experience unless they are unable to obtain a paying job in the real economy. Therefore, creating a new enterprise is more indicative of inability to be employed in the workplace than it is indicative of ability.
7. In the recently decided case of McGee -vs- Estes ExpressLines, 125 N.C. App. 298 (1997), the North Carolina Court of Appeals, discussing the effect of ownership of a business by an injured employee stated:
 ". . . . It is an employee's post-injury earning capacity rather than an employee's actual wages which are relevant in assessing the disability. Saums -vs- Raleigh Community Hospital, 124 N.C. App. 219, 221, 476 S.E.2d 372, 374
(1996). If the employee has the capacity to earn some wages, but less than he was earning at the time of the injury, he is entitled to partial disability benefits under section 97-30. Gupton -vs- Builders Trans., 320 N.C. 38, 42, 357 S.E.2d 674, 678 (1987). If the employee's earning capacity has been `Totally obliterated,' he is entitled to benefits under section 97-29. Id."
 "An employee's earning capacity must be measured by the employee's own ability to compete in the labor market. Peoples -vs- Cone Mills Corp., 316 N.C. 426, 437, 342 S.E.2d 798, 805 (1986). In other words, an employee's earning capacity is based on liability to command a regular income in the labor market. See Larson's Worker's Compensation Law
Section 57.51(e) (1996). Thus, employee ownership of a business can support a finding of earning capacity only to the extent the employee is actively involved in the personal management of that business and only to the extent that those management skills are marketable in the labor market., Id.. . .
8. While caselaw holds that an injured worker cannot collect both total permanent disability compensation and partial permanent disability compensation at the same time, it does not hold that a person who is able to return to work and thus remove himself from total permanent disability compensation cannot thereafter, when the return to work fails because of restrictions resulting from the compensable injury, be entitled to partial permanent disability compensation when he is able to earn some wages but not as much as he was earning at the time of the compensable injury.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer is entitled to credit for an overpayment of $894.98 for compensation paid from September 5, 1994 through October 5, 1994, representing the time period that plaintiff was employed by Dunning Metal Innovations.
2. Plaintiff is entitled to permanent total compensation at the rate of $256.45 per week for those periods from 22 April 1996 to the date of this award in which he was unable to earn any wages, and continuing, for those periods in which he was unable or is unable to earn any wages, subject to a credit to Defendant for any net earnings from Plaintiff's attempt to become self employed and to a credit as set forth in paragraph 1 above. Plaintiff shall furnish to Defendant on an ongoing monthly basis a certification of his net monthly earnings and based thereon Defendant shall promptly pay to Plaintiff any compensation due under this Opinion and Award. Plaintiff shall also furnish a certified copy of his Federal Income Tax Return to Defendant for each and every year in which he is entitled to workers' compensation payments from Defendant. Plaintiff shall furnish his 1996 tax return to Defendant within 60 days of receipt of this Opinion and Award and thereafter shall furnish annual tax returns for the previous calendar year by June 15 of each subject year.
3. The compensation awarded in paragraph 2 above shall continue until Plaintiff obtains a job earning as much as he earned when originally injured or until further orders of the Commission.
4. Compensation that has accrued to the date of this Opinion and Award shall be paid in a lump sum, subject to the reasonable attorney fee hereafter awarded.
5. Twenty-five percent of the compensation due plaintiff under this Opinion and Award is judged to be a reasonable attorney fee and shall be paid directly to plaintiff's attorney.
After Defendant has made the lump sum payments (3/4 to plaintiff and 1/4 to plaintiff's attorney), Defendant shall pay every fourth check directly to such attorney.
5. Defendant shall pay the costs.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ GEORGE T. GLENN II DEPUTY COMMISSIONER
S/ ________________ WILLIAM L. HAIGH DEPUTY COMMISSIONER