BARBARA D. MEADOWS, Employee, Plaintiff v. N.C. DEPT. OF TRANSPORTATION, Employer, SELF-INSURED, Defendant

No. COA99-801

(Filed 3 October 2000)

**1. Workers' Compensation— condition of employment— required shoes**

In a workers' compensation action brought by a driver's license examiner who had RSD in her feet and who alleged that her required work shoes aggravated her condition, the Industrial

Commission erred by concluding that the shoes issued by defendant were not a condition of employment where the evidence showed that plaintiff was required to wear her DMV uniform, including the shoes, that she was not allowed to purchase and wear her own shoes, and that defendant usually granted a physician's request that an employee be permitted to wear another style of shoe. There was no evidence that plaintiff knew that such an exemption could be had.

2. **Workers' Compensation— timeliness of claim—plaintiff not informed that she had an occupational disease**

In a workers' compensation action brought by a driver's license examiner who had RSD in her feet and who alleged that her required work shoes aggravated her condition, the Industrial Commission erred by concluding that the claim was barred for untimeliness where the opinion and award did not contain any finding as to when any treating physician informed plaintiff clearly, simply, and directly that she had an occupational disease and that the illness was work-related.

Judge HUNTER dissenting.

Appeal by plaintiff from opinion and award entered 4 March 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 April 2000.

*Kellum & Jones, by J. Kevin Jones, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Elisha H. Bunting, Jr., for defendant-appellee.*

TIMMONS-GOODSON, Judge.

Barbara D. Meadows ("plaintiff") appeals from adverse rulings by the North Carolina Industrial Commission ("Commission" or "Full Commission") which resulted in the denial of her claim for workers' compensation benefits. After a thorough examination of the record and briefs of the parties, we reverse the Commission's opinion and award.

The relevant factual and procedural history are as follows: In February of 1990, plaintiff began employment with the North Carolina Department of Transportation ("defendant") as a driver's license examiner. Her job responsibilities included administering licensing road, written, and vision tests, accessing the Division of Motor

Vehicles ("DMV") computer database, and photographing driver's license recipients. In the course of her duties, plaintiff spent approximately one-third of the workday on her feet.

At the onset of her employment, plaintiff was issued a standard DMV uniform, which included synthetic leather (Corfam) work shoes. Generally, DMV employees were not permitted to wear any shoes other than those provided by defendant. However, if an employee presented defendant with a written physician's request that she be permitted to wear another style of shoe because of some special medical circumstance, defendant usually granted the request. Plaintiff, who had pre-existing bunions and congenital deformities unrelated to her employment, never sought permission to wear an alternate shoe.

Plaintiff began to experience problems with her work shoes in June of 1990. As she stated, "[her] feet would become very hot, would perspire, and swell up in the shoe, and [she would experience] a lot of pain[,]" particularly in her right foot. Plaintiff's symptoms continued to worsen over the next five years, but she did not inform her supervisor, nor did she consult a physician during that time.

Plaintiff first sought medical attention for her symptoms on 13 November 1995, when she visited Dr. Thomas J. Hagan, a podiatrist. She reported experiencing right foot pain, which she said became increasingly severe throughout the workday while wearing the required Corfam shoes. Dr. Hagan's initial diagnosis was that plaintiff suffered from Morton's Neuroma in her right foot. To treat the condition, he injected plaintiff's foot with Celeston Soluspan and Lidocaine and fitted her with a Berkemann premolded orthotic device.

This treatment, however, proved to be unsuccessful, and on 30 November 1995, plaintiff returned to Dr. Hagan complaining of further foot discomfort. Dr. Hagan performed additional tests and discovered that plaintiff had multiple foot problems including hallux abducto valgus, hallux abductus, hypertrophic bone-fifth toe, plantar declinated fifth metatarsal and Morton's Neuroma-third interspace, all of which were pre-existing, non-occupational deformities. He did not, at that time, advise plaintiff that the malformations of her foot were aggravated or exacerbated by work-related conditions, such as the required Corfam shoes. He recommended that she undergo surgery to correct the problems and filed a request for permission to perform the surgery with plaintiff's regular medical insurance carrier.

On 8 December 1995, Dr. Hagan surgically corrected plaintiff's right foot deformities. Plaintiff's regular health insurance provider approved the operation and paid the medical costs. On 16 February 1996, plaintiff underwent a follow-up procedure to the original surgery, and on 4 March 1996, Dr. Hagan released plaintiff to return to light-duty, indoor work. Plaintiff reported to work the following day, and after contacting the Raleigh office to learn that work commensurate with plaintiff's restrictions was unavailable, plaintiff's supervisor sent her home. Since then, plaintiff has not sought or held other employment.

Presented on 4 April 1996 with plaintiff's complaints of increased pain and a "feeling of fullness" in her right foot, Dr. Hagan referred her to Dr. James M. Tarpley at New Bern Anesthesia Associates for diagnosis and further treatment. Thereafter, Dr. Tarpley examined plaintiff and diagnosed her as having a painful condition known as Reflex Sympathetic Dystrophy ("RSD"), which he attributed to the surgeries performed on plaintiff's right foot. From April to June of 1996, Dr. Tarpley treated plaintiff's condition with lumbar sympathetic blocks, intravenous regional blocks, an intravenous bretyline block, pain medication and physical therapy. Plaintiff's condition, however, has not improved, as the treatments have provided only temporary pain relief. Plaintiff has since developed RSD in her left foot as well, and she experiences chronic, disabling pain. There has been no determination that plaintiff's disability is permanent, nor has plaintiff ever received a disability rating.

Plaintiff filed a claim for workers' compensation benefits on 5 November 1996 alleging that she contracted an occupational disease in that the required Corfam work shoes aggravated her pre-existing, non-work-related foot deformities. The matter came before Deputy Commissioner Mary Moore Hoag, who, on 26 June 1998, entered an opinion and award wherein she concluded that plaintiff's disease was non-occupational and, for that reason, denied her workers' compensation claim. Plaintiff appealed this decision to the Full Commission, and the panel affirmed the deputy commissioner with minor modifications. Plaintiff again appeals.

---

The primary issue on appeal is whether the record before the Commission contains competent evidence to support its conclusion that plaintiff's RSD is not an occupational disease, as that term is defined in section 97-53(13) of the North Carolina General Statutes. We hold that it does not.

**MEADOWS v. N.C. DEP'T OF TRANSP.**

[140 N.C. App. 183 (2000)]

The scope of this Court's review of an opinion and award entered by the Full Commission is well defined. We must first examine the record to determine whether any competent evidence exists therein to support the Commission's findings of fact. *McLean v. Roadway Express*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982). If the findings have any evidentiary basis, we must then look to the Commission's conclusions of law to determine whether they, in turn, are supported by the factual findings. *Id.* The Commission's findings are given great deference, *McAninch v. Buncombe County Schools*, 122 N.C. App. 679, 471 S.E.2d 441 (1996), *rev'd on other grounds*, 347 N.C. 126, 489 S.E.2d 375 (1997), and, when supported by competent evidence, are binding on this Court, *Keel v. H & V Inc.*, 107 N.C. App. 536, 421 S.E.2d 362 (1992). This is true, despite the presence of evidence supporting contrary findings. *Lumley v. Dancy Construction Co.*, 79 N.C. App. 114, 122, 339 S.E.2d 9, 14 (1986). The Commission's conclusions of law, however, are subject to this Court's *de novo* review. *Grantham v. R. G. Barry Corp.*, 127 N.C. App. 529, 491 S.E.2d 678 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998).

Pursuant to section 97-53 of our General Statutes, an occupational disease is "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13) (1999).

> "The requirement that the disease be 'characteristic of or peculiar to' the occupation of the claimant precludes coverage of diseases contracted merely because the employee was on the job. For example, it is clear that the Law was not intended to extend to any employee in a shoe factory who contracts pneumonia simply by standing next to an infected co-worker. In that example, the employee's exposure to the disease would have occurred regardless of the nature of the occupation in which he was employed. To be within the purview of the Law, the disease must be so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted."

*Booker v. Medical Center*, 297 N.C. 458, 473-74, 256 S.E.2d 189, 199 (1979) (quoting *Russell v. Camden Community Hospital*, 359 A.2d 607, 611-12 (Me. 1976)). Thus, "[a] disease is an occupational disease compensable under N.C. Gen. Stat. 97-53(13) if claimant's employ-

ment exposed [her] 'to a greater risk of contracting this disease than members of the public generally . . .' and such exposure 'significantly contributed to, or was a significant causal factor in, the disease's development.' " *Gay v. J. P. Stevens & Co.*, 79 N.C. App. 324, 330, 339 S.E.2d 490, 494 (1986) (quoting *Rutledge v. Tultex Corp.*, 308 N.C. 85, 101, 301 S.E.2d 359, 369-70 (1983)). An employee claiming an occupational disease has the burden of proving compensability. *Id.* at 331, 339 S.E.2d at 494.

[1] Regarding the conditions of plaintiff's employment, the Commission made the following relevant findings of fact:

> 4. As a part of her employment with defendant, plaintiff was required to wear at all times a uniform which included synthetic leather (Corfam) work shoes that were provided by defendant to plaintiff. Plaintiff was not allowed to purchase and wear her own work shoes. However, upon request and receipt of a written statement from a doctor, shoes other than the required work shoes would be permitted. Plaintiff never requested permission to wear other than the required work shoes. She did not ask her doctor, Dr. Hagan, for a prescription although he had previously provided such a statement for other DMV workers.
>
> . . . .
>
> 16. The work shoes worn by plaintiff aggravated her pre-existing, non-disabling, non-work related right foot condition. However, the shoes which were issued as part of plaintiff's uniform were not required as a condition of employment, but could have been and were in other cases, replaced by shoes which would not aggravate plaintiff's pre-existing condition.

Based on these findings, the Commission then concluded the following:

> 2. . . . The uncontradicted evidence shows that the shoes which were issued as part of plaintiff's uniform were not a requirement of her employment, but could have been replaced upon her request with shoes which accommodated plaintiff's condition. Plaintiff's decision to continue wearing shoes which aggravated her condition could have occurred in any occupation; therefore, the shoes in question do not constitute a condition of plaintiff's particular trade, occupation or employment. Accordingly, any aggravation of plaintiff's non-disabling, pre-existing condition, the surgery, the resulting RSD, and any subsequent dis-

ability therefrom, are not the result of causes and conditions characteristic of and peculiar to claimant's employment. (Citation omitted).

. . . .

4. Plaintiff has not suffered an occupational disease arising out of and in the course of the employment with defendant-employer. Plaintiff does not have a compensable disability, because any inability to earn wages in her former employment with defendant-employer is the result of surgery for a non-occupational disease and/or subsequent complications arising therefrom. (Citations omitted).

As previously noted, we will not disturb the Commission's findings of fact if the record contains any competent evidence to support them. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798 (1986). "Where, however, there is a complete lack of competent evidence in support of the findings they may be set aside." *Id.* at 432-33, 342 S.E.2d at 803. Such action is fitting in this case, since the record lacks any evidence that "the shoes which were issued as part of plaintiff's uniform were not required as a condition of employment."

The evidence indicates and, indeed, the Commission found that plaintiff was required to wear her DMV uniform, including the Corfam shoes, at all times during work hours. The evidence and the findings further show that "[p]laintiff was not allowed to purchase and wear her own work shoes." Still, the Commission found that the Corfam shoes were not a requirement of plaintiff's employment. This finding, it appears, was based on the notion that an employee's ability to be exempted from wearing the shoes due to special medical needs transformed the "requirement" into an election or personal choice. Notwithstanding that we have found nothing in our jurisprudence to support the Commission's reasoning, we find no evidence in the record to show that plaintiff knew such an exemption could be had. Accordingly, the Commission's findings and corresponding conclusions that the Corfam shoes issued by defendant were not a condition of plaintiff's employment cannot stand.

[2] Next, we must consider whether the record supports the Commission's conclusion that plaintiff failed to timely notify defendant of her occupational disease, as required by sections 97-22 and 97-58(b) of the General Statutes. Again, we hold that it does not.

Under section 97-22 of our General Statutes,

> Every injured employee . . . shall immediately on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the employer a written notice of the accident, . . . but no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby.

N.C. Gen. Stat. § 97-22 (1999). Section 97-58 of the General Statutes sets forth the time limits for filing claims of occupational disease:

> . . . .

> (b) The report and notice to the employer as required by G.S. 97-22 shall apply in all cases of occupational disease except in case of asbestosis, silicosis, or lead poisoning. The time of notice of an occupational disease shall run from the date that the employee has been advised by competent medical authority that he has same.

> (c) The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability, or disablement as the case may be. . . .

N.C. Gen. Stat. § 97-58(b), (c) (1999). Construing the provisions of section 97-22 and 97-58 in *pari materia*, our Supreme Court has said that an employee claiming an occupational disease must notify the employer of her ailment within thirty days after she is advised by competent medical authority of the nature and work-related cause of the disease, *Booker*, 297 N.C. at 480-81, 256 S.E.2d at 203, and must file a claim for disability within two years of receiving such advice, *Lawson v. Cone Mills Corp.*, 68 N.C. App. 402, 403, 315 S.E.2d 103, 104 (1984). Therefore, to trigger the running of the statutory time limit, the employee first "must be informed clearly, simply and directly that [s]he has an occupational disease and that the illness is work-related." *Id.* at 410, 315 S.E.2d at 107.

The Commission in the instant case concluded that plaintiff notified defendant of her occupational disease in an untimely manner:

**MEADOWS v. N.C. DEP'T OF TRANSP.**

[140 N.C. App. 183 (2000)]

3. . . . Plaintiff received medical knowledge of her condition as early as 13 November 1995. Although Dr. Hagen [sic] did not tell plaintiff that her problems were related to her shoes, plaintiff testified that she had related her discomfort to the shoes for the previous five years. Even after her surgery, plaintiff failed to inform defendant of the relationship between her shoes and her condition until she filed a claim under the Act in November 1996. By waiting to provide defendant with notice until after she had voluntarily aggravated her condition for five years and an additional year after she had surgery on her foot, plaintiff effectively eliminated defendant's opportunity to alleviate the problem by allowing plaintiff to wear different shoes. Accordingly, defendant was prejudiced by plaintiff's failure to give timely notice, and plaintiff is statutorily barred from claiming compensation under the Act.

We hold that this conclusion is contrary to the findings of fact and the evidence.

The Commission found that although Dr. Hagan diagnosed plaintiff's condition on 30 November 1995, "[he], at that point, did not advise plaintiff she was suffering from an aggravation or exacerbation of her foot deformities due to work-related conditions." The opinion and award does not contain any finding as to when Dr. Hagan, or any other treating physician, "informed [plaintiff] clearly, simply and directly that [s]he ha[d] an occupational disease and that the illness [was] work-related." *Id.* at 410, 315 S.E.2d at 107. Thus, the Commission had no basis to conclude that the statutory notice and filing time periods had triggered, much less expired. The Commission's conclusion that plaintiff's claim was barred for untimeliness then must fail.

For the foregoing reasons, we reverse the opinion and award of the Full Commission and remand this matter for further appropriate proceedings.

Reversed and remanded.

Chief Judge EAGLES concurs.

Judge HUNTER dissents.

Judge HUNTER dissenting.

The majority has chosen to overturn the unanimous decision of the Full Commission (affirming the deputy commissioner's decision) finding for the defendant-employer ("DOT"). For the reasons outlined below, I respectfully dissent.

The majority opinion is based on the fact that because the Commission found that the shoes issued as a part of plaintiff's uniform were not required as a condition of employment and plaintiff was not allowed to purchase and wear her own work shoes, the Commission cannot then "transform[] the 'requirement' into an election or personal choice." However, I do not agree that the Commission did so.

In finding that the shoes were required—DOT having readily admitted it—the Commission simply acknowledged the general rules of employment for that employer. However, DOT stated and the Commission found as fact that "upon request and receipt of a written statement from a doctor, shoes other than the required work shoes would [have] be[en] permitted. Plaintiff does not dispute this finding, but neither does she argue that she ever made the request. Instead, plaintiff alleges that from the beginning of her employment with defendant, she "experienced problems with her feet [above and beyond the already pre-existing conditions] while wearing the required work shoes . . . [and that] her symptoms worsened over [the] five years [she worked for defendant]; [yet] she never complained to her supervisor nor consulted a physician."

It is true that under N.C. Gen. Stat. § 97-22, an employee is required to notify her employer, in writing, that she has an occupational disease "within 30 days after the occurrence." In addition, § 97-58(b) sets out that "[t]he time of notice . . . [to the employer does not begin to run until] the employee *has been advised by competent medical authority*" that he has the occupational disease. N.C. Gen. Stat. § 97-58(b) (1999) (emphasis added). However, even though plaintiff admits that she believed, from the very beginning of the five years she worked for defendant, that her disease was being aggravated by the work shoes, the majority chooses to hold that plaintiff was not required to notify defendant of her occupational disease until a doctor actually attributed the illness to her work *and advised her so*. I do not believe this interpretation bodes well with case law or legislative statutory intent.

MEADOWS v. N.C. DEP'T OF TRANSP.

[140 N.C. App. 183 (2000)]

When we read N.C. Gen. Stat. § 97-58(c) which deals with occupational disease caused by radiation (an injury which often takes a long time to show itself), we see that our Legislature clearly chose to place responsibility *on the employee* to notify her employer of its possible liability. The pertinent portion of the statute states:

> [T]he right to compensation for radiation injury, disability or death *shall be barred UNLESS* a claim is filed within two years after the date upon which the employee first suffered incapacity from the exposure to radiation and either knew or *in the exercise of reasonable diligence should have known that the occupational disease was caused by his . . . employment.*

N.C. Gen. Stat. § 97-58(c) (1999) (emphasis added). Thus, I do not believe that our Legislature intended to hold victims of radiation poisoning to a higher standard than employees injured in the workplace by other means.

It has long been held by the courts of this state that:

> Statutes *in pari materia* are to be construed together and where the language is ambiguous, the court must construe it to ascertain the true legislative intent. *And where a strict literal interpretation of the language of a statute would contravene the manifest purpose of the Legislature, the reason and purpose of the law should control,* and the strict letter thereof should be disregarded.

*Duncan v. Carpenter*, 233 N.C. 422, 426, 64 S.E.2d 410, 413-14 (1951), *overruled on other grounds, Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E.2d 144 (1980) (emphasis added) (citations omitted). Furthermore, this Court has enunciated the Legislative intent in "holding that time for [latent occupational disease] claims runs from notification of injury is . . . [due to] the peculiar problems of such a disease . . . ." *Taylor*, 300 N.C. at 101, 265 S.E.2d at 148.

> It is clear that our Legislature never intended that the statutory scheme of G.S. 97-58 would be construed to render time for notice and claim absurd. It is equally clear that our Legislature never intended that a claimant for workers' compensation benefits would have to make a correct medical diagnosis of his own condition prior to notification by other medical authority of his disease in order to timely make his claim. . . .

> [However,] *[t]his is not to say that the time of disablement for other statutory provisions is necessarily the date a claimant was informed he was disabled by an occupational disease. . . .*

*Id.* at 102, 265 S.E.2d at 149 (citation omitted) (emphasis added).

Thus, construing these statutes and our case law *in para materia*, I believe it is evident that where an employee *"in the exercise of reasonable diligence should have known that [her] occupational disease was caused by h[er] . . . employment*[,]" she had a responsibility to timely file her claim so that her employer would be put on notice, N.C. Gen. Stat. § 97-58(c) (emphasis added), *UNLESS* she had a "reasonable excuse." N.C. Gen. Stat. § 97-22 (1999).

> A "reasonable excuse" has been defined by this Court to include "a belief that one's employer is already cognizant of the accident . . ." or "[w]here the employee does not *reasonably know of the nature, seriousness, or probable compensable character of his injury and delays notification only until he reasonably knows* . . . ." *Lawton v. County of Durham*, 85 N.C. App. 589, 592, 355 S.E.2d 158, 160 (1987). The burden is on the employee to show a "reasonable excuse."

*Jones v. Lowe's Companies*, 103 N.C. App. 73, 75, 404 S.E.2d 165, 166 (1991) (emphasis added). In the case at bar, it is my belief that plaintiff failed to give timely notice—without reasonable excuse—thus the Commission was correct in denying her claim against her employer. N.C. Gen. Stat. § 97-22. Nevertheless, even if plaintiff's notice was timely, I believe the Commission was correct in denying her claim.

In *Jones*, plaintiff-employee was a delivery clerk who injured his leg when he fell while carrying several panels of sheetrock. Plaintiff-employee did not notify his employer the day of the accident and only did so when, more than two months later, "his leg became numb and would no longer support his body." *Jones*, 103 N.C. App. at 76, 404 S.E.2d at 166. Plaintiff-employee argued that his notice to employer was timely because it was not until that point that he knew the nature and seriousness of his injury. *Id.* This Court, agreeing with plaintiff-employee that his notice was timely, opined that timely notice was, however, not enough; the Court reasoned that:

> If prejudice [against employer] is shown, Employee's claim is [still] barred even though he had a reasonable excuse for not giv-

ing notice of the accident within 30 days. . . . Whether prejudice exists requires an evaluation of the evidence in relationship to the purpose of the statutory notice requirement.

"The purpose is dual: First, *to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury*; and second, to facilitate the earliest possible investigation of the facts surrounding the injury."

2B Larson's Workmen's Compensation Law § 78.10, 15-102; *Booker v. Medical Center*, 297 N.C. 458, 481, 256 S.E.2d 189, 204 (1979).

*Id.* at 76-77, 404 S.E.2d at 167 (citations omitted) (emphasis added).

In the case at bar, the Commission found in its Opinion and Award that:

2. During her employment with defendant-employer, plaintiff has filed at least four workers' compensation claims, only one of which has been found compensable. When questioned about the claims, plaintiff had no memory of them.

. . .

4. As a part of her employment with defendant, plaintiff was required to wear at all times a uniform which included synthetic leather (Corfam) work shoes that were provided by defendant to plaintiff. Plaintiff was not allowed to purchase and wear her own work shoes. However, upon request and receipt of a written statement from a doctor, shoes other than the required work shoes would be permitted. Plaintiff never requested permission to wear other than required work shoes. She did not ask her doctor, Dr. Hagan, for a prescription although he had previously provided such a statement for other DMV workers.

5. Plaintiff had pre-existing non-work related foot problems consisting of bunions and congenital deformities.

6. In June of 1990, at the beginning of her employment with defendant-employer, plaintiff experienced problems with her feet while wearing the required work shoes. Her feet would become hot, they would perspire, swell and plaintiff would experience pain, more in the right foot than the left. According to plaintiff,

her symptoms worsened over five years; however, she never complained to her supervisor nor consulted a physician.

. . .

8. Plaintiff and Dr. Hagan agreed that plaintiff had pre-existing foot deformities and also foot pain and problems for at least the preceding five years.

. . .

11. Plaintiff informed her supervisor of the surgery to take place on 8 December 1995. Plaintiff testified that she told her supervisor that she could not wear the shoes without having surgery, and her supervisor stated that plaintiff informed him she was having foot problems which required surgery. However, plaintiff never informed her supervisor that the condition requiring surgery was caused or otherwise due to the shoes she wore as part of her uniform. Plaintiff never complained to her supervisor about her shoes. She never requested permission during the five years of her employment, to wear shoes other than the Corfam shoes supplied at work. Defendant was prejudiced by plaintiff's failure to inform it of the relationship between her shoes and her increasingly deteriorating foot condition. Had plaintiff informed defendant of the problem, her shoes could have been changed and no aggravation of her condition would have occurred.

12. Plaintiff never asserted that her pre-existing foot deformities were aggravated by her work conditions until more than a year after her surgery, when she was diagnosed with Reflex Sympathetic Dystrophy (RSD) resulting from the surgery.

The Commission then concluded that:

2. . . . The uncontradicted evidence shows that the shoes which were issued as part of plaintiff's uniform were not a requirement of her employment, but could have been replaced upon her request with shoes which accommodated plaintiff's condition. Plaintiff's decision to continue wearing shoes which aggravated her condition could have occurred in any occupation; therefore, the shoes in question do not constitute a condition of plaintiff's particular trade, occupation or employment. Accordingly, any aggravation of plaintiff's non-disabling, pre-existing condition, the surgery, the resulting RSD, and any subsequent disability therefrom, are not the result of causes and conditions character-

istic of and peculiar to claimant's employment. N.C. Gen. Stat. § 97-53(13); *Id.*

3. Plaintiff is responsible for providing employer with notice of her occupational disease in accordance with the mandates of N.C. Gen. Stat. § 97-22[] [and] . . . N.C. Gen. Stat. § 97-58(b). . . .

By waiting to provide defendant with notice until after she had voluntarily aggravated her condition for five years and an additional year after she had surgery on her foot, *plaintiff effectively eliminated defendant's opportunity to alleviate the problem* by allowing plaintiff to wear different shoes. Accordingly, *defendant was prejudiced by plaintiff's failure to give timely notice* . . . .

4. Plaintiff has not suffered an occupational disease arising out of and in the course of the employment with defendant-employer. . . . Plaintiff does not have a compensable disability, because any inability to earn wages in her former employment with defendant-employer is the result of surgery for a non-occupational disease and/or subsequent complications arising therefrom. . . .

(Emphasis added.)

Thus, there is no doubt in my mind that the majority opinion prejudices an unknowing employer by holding it responsible for a situation that could have easily been avoided or certainly mitigated had plaintiff, through reasonable diligence, taken responsibility and done what any reasonable and prudent person would have done— notified her employer of the problem. Because I believe there is competent evidence in the record to support the Commission's findings and conclusions, I vote to affirm the Commission's Opinion and Award.