***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction over the parties and the subject matter of this claim.
2. Defendant is a duly qualified self-insured.
3. On or about November 20, 2000, an employer-employee relationship existed between the plaintiff and defendant-employer.
4. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
5. Plaintiff sustained an admittedly compensable back injury on November 20, 2000 for which defendant filed a Form 60.
6. Plaintiff's average weekly wage was $1,028.56, which was sufficient to generate the maximum compensation rate for 2000 of $588.00.
7. The parties entered the following exhibits into the evidence of record at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1 — medical records, 63 pages
b. Stipulated Exhibit 2 — case management records, two pages
c. Stipulated Exhibit 3 — payment log
d. Defendant's Exhibit 1 — defendant's termination letter to plaintiff
8. The issue for determination by the Commission is to what extent, if any, is plaintiff entitled to additional indemnity benefits as a result of his compensable injury by accident on November 20, 2000.
 ***********
Based upon the competent evidence of record the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was a fifty-six year old high school graduate. He had twenty-six years of experience in computer/copier repair and software support.
2. Plaintiff had a prior C5-6 fusion in 1988.
3. In May of 1996, defendant hired plaintiff as a computer administrator. His duties included installing and moving computers, as well as maintaining the Department's network.
4. On November 20, 2000, plaintiff sustained an admittedly compensable injury to his cervical spine when he lifted some asphalt samples.
5. Plaintiff received conservative treatment from Concentra Medical Center from December 5, 2000 through April 24, 2001.
6. After conservative treatment did not provide relief, plaintiff was referred to Dr. Timothy B. Garner of Capital Neurosurgery.
7. Plaintiff told Dr. Garner he was injured lifting samples off his desk and that he experienced right neck and shoulder pain.
8. Dr. Garner felt plaintiff's problem were unrelated to the symptoms plaintiff experienced five years before.
9. An MRI was performed which showed problems at C4-5 and C6-7, which are above and below the fusion plaintiff had done in the 1980s. Dr. Garner referred plaintiff to Dr. Kenneth J. Rich, an orthopedic surgeon, for evaluation.
10. On May 25, 2001, Dr. Rich performed an anterior cervical diskectomy and fusion using donor bone and placed Atlantis plates at C4-5 and C6-7, resulting in a three level fusion. Dr. Garner testified it is unusual to do a three level fusion, due to the level of complications that can result.
11. On June 4, 2001 defendant filed a Form 60, Employer's Admission of Employee's Right to Compensation, for the injury to plaintiff's neck, right shoulder and arm.
12. On July 30, 2001, Dr. Garner released plaintiff to return to work as of August 6, 2001 with a forty-pound lifting restriction. Dr. Garner found plaintiff to still have pain, but felt he would continue indefinitely to experience some level of pain.
13. By July 30, 2001, plaintiff reached maximum medical improvement and retained a 10% permanent partial impairment to his spine.
14. On August 1, 2001, Dr. Garner found plaintiff to have significant lumbar stenosis at L4-5 and not as severe stenosis at L3-4 which were unrelated to the compensable injury.
15. On August 7, 2001, defendant filed a Form 28T, Notice of Termination of Compensation by Reason of Trial Return to Work, stating plaintiff returned to work on August 6, 2001.
16. Defendant paid plaintiff for his 10% impairment rating on a Form 21 Agreement dated September 11, 2001, for the period from August 6, 2001 to March 12, 2002.
17. Although plaintiff returned to work on August 6, 2001, he continued to experience pain in his neck, right arm and hand. However, he did not report any problems to his supervisor. Upon his return to work, defendant accommodated plaintiff's restrictions, and plaintiff frequently went home early due to symptoms of pain.
18. Plaintiff testified that he could not perform his job, even with the accommodations made by defendant. Plaintiff's inability to perform his job duties was confirmed by the testimony of four of plaintiff's co-workers.
19. Defendant filed a Form 28B, Report of Employer or Carrier/ Administrator of Compensation and Medical Compensation Paid and Notice of Right to Additional Medical Compensation, with the Industrial Commission on March 25, 2002 representing that plaintiff was paid his last compensation check on March 11, 2002.
20. On April 3, 2002, defendant placed plaintiff on investigatory leave without pay while under personnel investigation.
21. Plaintiff scheduled an appointment with Dr. Garner on April 11, 2002, during which plaintiff related continued pain in his neck, shoulder, arm and low back. Dr. Garner noted that plaintiff was "really having a hard time with his spine." Dr. Garner ordered an MRI and provided an out-of-work note. Dr. Garner also reported that "[e]ven with the restrictions I've put him on he really can't get his job done. I've suggested to him that he needs to medically retire and he agrees."
22. On April 18, 2002, plaintiff was terminated due to unacceptable personal conduct. Plaintiff's termination was for misconduct for which a non-disabled employee would normally have been terminated and was unrelated to his workers' compensation injury.
23. On April 19, 2002, plaintiff filled out a Form 18M, Employee's Application for Additional Medical Compensation, which was signed by Dr. Garner on May 8, 2002. The Form 18M stated that plaintiff may need additional surgery. The Form 18M was approved by the Executive Secretary by Order dated June 21, 2002.
24. On April 24, 2002, plaintiff filed a Form 28U, Employee's Request that Compensation be Reinstated after Unsuccessful Trial Return to Work. Plaintiff requested that compensation be reinstated and reported his last day worked as April 11, 2002. By Order dated June 21, 2002, the Executive Secretary ordered reinstatement of compensation; however, upon reconsideration the Executive Secretary vacated the Order by subsequent Order filed September 9, 2002. Defendant has not reinstated payment of compensation to plaintiff since his termination from employment.
25. Dr. Garner testified that prior to April 2002 he had discussed the seriousness of plaintiff's neck condition and that he was not sure plaintiff should continue to perform his job. Dr. Garner never got the impression plaintiff wanted to get out of his job. Dr. Garner further testified that plaintiff's spinal problems had materially changed for the worse in April of 2002. Dr. Garner's suspicions were confirmed by plaintiff's April 23, 2002 MRI which revealed new signal changes in his spinal cord at C5-6, which indicated progressive injury to the spinal cord.
26. Dr. Garner stated that plaintiff's spinal changes were a result of his compensable injury. Dr. Garner believed that plaintiff's prior C5-6 fusion was not solid and the necessity of the two fusions above and below the C5-6 level contributed to the deterioration of the prior fusion at C5-6.
27. In his notes from plaintiff's visit on August 7, 2002, Dr. Garner evaluated plaintiff's condition as follows: "From the cervical spine standpoint, however, he is released from my care today at maximum medical improvement with a permanent partial disability rating totally of 20%. There is really no way that this man is going to be able to go back to his job because of his neck. He needs to be retired medically."
28. At the time of the hearing before the Deputy Commissioner the additional 10% rating had not been paid by defendant.
29. `Plaintiff received short-term disability benefits through an employer-funded plan following his termination. However, specific evidence as to the duration or amount of plaintiff's compensation was not entered into the record at the hearing before the Deputy Commissioner.
30. As of April 19, 2002 plaintiff experienced a change affecting his physical capacity to earn which resulted in an additional 10% permanent functional impairment to his cervical spine. Plaintiff's changes to his cervical spine shown on the April 23, 2002 MRI led to increased pain to the point that he was no longer able to perform his job or any other employment.
 ***********
Based upon the findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 20, 2000, plaintiff sustained an admittedly compensable injury by accident to his cervical spine. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's termination from employment with defendant-employer is attributable to plaintiff's misconduct, unrelated to the compensable injury, for which a non-disabled employee would ordinarily be terminated. Therefore, plaintiff's termination constitutes a constructive refusal to perform the work provided. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472, S.E.2d 397 (1996).
3. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that his inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. AustinCo. of Greensboro, supra.
4. In this case plaintiff has met his burden of proving continuing disability related to the compensable injury in that he sustained a substantial change of condition as of April 19, 2002 and that he has been totally disabled from earning wages in any employment since his April 19, 2002 change of condition and continuing to the present. N.C. Gen. Stat. § 97-47; Weaver v. Swedish Imports Maintenance, Inc.,319 N.C. 243, 354 S.E.2d 477 (1987); McLean v. Roadway Express,307 N.C. 99, 296 S.E.2d 456 (1982); Lucas v. Bunn Manuf. Co.,90 N.C. App. 401, 368 S.E.2d 386 (1988).
5. As a result of his change of condition, plaintiff is totally disabled and entitled to receive total disability compensation at the rate of $588.00 per week beginning April 19, 2002 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. Defendant is entitled to a credit for short-term disability benefits paid to plaintiff through the employer-funded plan. N.C. Gen. Stat. § 97-42.
7. As a result of the compensable injury by accident, plaintiff is entitled to have defendant pay for all medical treatment which tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, -25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorney's fee awarded below, defendant shall pay plaintiff total disability compensation at the rate of $588.00 per week from April 19, 2002 and continuing until further Order of the Industrial Commission. Any accrued benefits shall be paid in a lump sum.
2. Defendant is entitled to a credit for short-term disability benefits paid through the employer-funded plan.
3. A reasonable attorney's fee of twenty-five percent is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay for medical expenses incurred as a result of the compensable injury.
5. Defendant shall pay the costs.
This the ___ day of January 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd